Opinion delivered by
Judge Whyte.
Boyd obtained a judgment in the county court of Davidson county against Martin Armstrong in his lifetime, and ran several executions against his property, by which a part of the judgment was satisfied. Martin Armstrong died in the year 1810. In April 1812, Boyd issued a scire facias against the heirs of Armstrong, naming them, to shew cause why he should not have his judgment satisfied out of the lands descended to them, on which was returned “not found” to the April term of said court. Another scire facias was issued returnable to the July term, on which was the like return of not found, and a judgment by default was rendered against the heirs for ‡-to be levied on the lands and tenements in their hands that Martin Armstrong died seized of, and may have descended'to them as his heirs. *41 This judgment was rendered, July term 1812. Upon this judgment an execution issued to the county of-and was levied on lands lying on the west side of Tennessee river. At Davidson county court, April term, 1819, a motion was made on behalf of the heirs of Armstrong to quash the said execution, so issued, under and by virtue of the judgment on the scire facias, rendered July, 1812. This motion was adjourned to the circuit court of Davidson county, which, at its May term, 1819, sustained the motion, quashed the execution and ordered that the heirs of Armstrong recover their costs from Boyd, in the motion expended. From this judgment Boyd prayed and obtained an appeal in nature of a writ of error to this court.
It appears from the record that no scire facias issued against the personal representatives of Martin Armstrong; and further, that he had none, having died without will and no administration had been committed*
Whether the circuit court erred in quashing the execution will depend on two qestions. 1st. Whether the real estate can be first subjected to the satisfaction of this judgment in the hands of the heirs before recourse had to the personal estate. 2dly. If it can, do these proceeding on these scire faciases subject it. And 3dly. If these proceedings do not subject the real estate, was the quashing of the execution a proper remedy for the party injured.
The first question is, can the real estate be first subjected to the judgment in the hands of the heirs before recourse had to the personal estate. To understand our acts of Assembly with reference to this subject and their precise bearing on the present question, it is necessary to have recourse to the common law and the English statutes prior to the revolution, and see how it was by them. They will unfold the principle on which this part of our law rests, and render the explication of the doubts entertained at the bar upon the acts of 1784, 1789 and 1764 more easy and certain.
Lord Coke, in liis 2d Inst. 391 tells us that at the com *42 mon law, when a subject sued an execution upon ajudg" ment for debt or damages, he should not have the body of the defendant or his land in execution, (unless it were in special cases) but only his goods and chattels, his corn and other present profit that grew upon his land, to which purpose the law gave writs — the levari facias and the fieri facias. In these feudal times the body was exempted, for every man by his tenure was obliged to serve the king in his wars, and at home, the several lords according to the distinct nature of their tenure. The land was exempted, because it had to answer the duties of the lord of the fief which were as heavy as they probably could support, and of all charges whatsoever, in those times, the one of the greatest importance. Thus continued the law adapted to a state of warfare, until the circumstances of a commercial society and trading interest overcoming the influence of the feudal lord in the time of Edward the first, obtained the right of taking the land in execution, by statute in the 13th year of his reign and chapter 18. This statute, however, did not exempt the goods and chattels; the policy that dictated it was averse to such a measure. It was not the easement, even, much less the exoneration of the personalty, that produced this charge on the land, but the extension, the protection and security of trade and commerce; the land, therefore, was intended, and became an additional remedy, introduced for the benefit of the creditor, and existing, as it were, an ultimate resource behind the personalty, to be applied to, and that only in case of its insufficiency. And so hath this statute always been construed, and the judgment creditor cannot abandon the personalty and have recourse only to the land, for the words of the statute are, “shall deliver to him all the chattels of the debtor, except,” &c. and the one half of his land. The chattels being first named in the statute, ' it would seem to indicate the intent of the makers to be, that they should be first taken by the sheriff, and if sufficient to satisfy the execution, the land should not be extended at all; if less than sufficient, then only for the difference constituting the deficiency, and this has been con *43 sidered the law ever since,down to the present time. To this amount is 2 Inst. 395, and 4 Comyn’s Dig. 131. Bacon’s Abr. 475. This principle of the common law in la-vor of the freehold, that the personalty is the primary and the proper fund for the satisfaction of debts, and must be resorted to in the first instance for that purpose, always has been respected. No statute hath evaded it, and the king’s prerogative itself hath yielded to its prevailing influence; for although he, by virtue of his prerogative, might at all times have at once execution of body, land and goods in the same writ, still it was under this restriction, that the land was not extendible while the chattels were sufficient — -Plowd. 440 a, 3 Rep. 11. Bing. 116.
From these authorities it stands incontrovertible, that a judgment against the debtor himself must be first satisfied out of the personalty, if sufficient for that purpose upon the execution which charged the land, — to wit, the ele-git. Does the debtor’s death alter this rule of law, and authorize an infringement of the common law principle? It is to be remembered that from the death of the judgment debtor, the situation of the property is changed; the personalty and reality are not in one and the same hands as before the death; they are now separated, — the former in the hands of the executor or administrator, the latter in the hands of the heirs or devisee. If the elegitis issued against the reality in the hands of the heir in the first instance, and without any previous step taken against the personalty by the creditor, how is the rule of law to be respected? how is the personalty to be subjected to the satisfaction of the judgment. It cannot be done by the sheriff upon the executing of the elegit, (if its terms were broad enough and in words including goods and chattels) for they are not in the hands of the heir against whom the writ is directed, but in the hands of the executor. Execution then against the heir in the first instance will not do. To obviate this objection it has been said at the bar, that the execution having issued against the judgment debtor in his lifetime, is not affected by his death,’but is to be executed in the same manner as if he were alive. *44 This is true only, as far as it applies to the individual writ of execution that hath issued or hears test before the death, (or to a venditioni exponas which is the same thing, to sell the goods, &c. that hath been levied on by it,) but not to any subsequent writ. And so is the precedent, Lilly’s Entries, 652. This further appears from the reasons assigned in the books, to wit: that as the party himself could not have made any defence to the writ, there is no reason why his representative should be in a better condition, and the execution being an entire thing cannot be superceded after it has began — 6 Bac. Abr. 112.PSalk. 223. In all other cases, the rule that when any new person, (hat is, one not originally party to the judgment, as executor, or administrator or heir, is to be charged or benefitted by the execution, new measures become necessary before the execution can be proceeded in — 1 P. Raym. 245. Salk. 319. 2 Inst. 471. Bing. 119, for the alteration of the person alters th.e process — ibid. And it may be presumed that the party newly to be charged has some defence to offer. In order therefore to prevent the obtaining of' any undue advantages by surprise, it is requisite, before proceeding to execution, to sue out the writ of scire facias, by which the party to be charged is warned to show cause why execution should not issue, against him, and to which he may make any defence the nature of his case will admit. After the death of Martin Armstrong, the defendant in the judgment in the present case, before an execution could issue in satisfaction of the judgment, or of that part that remained unsatisfied at his death, it must have been preceeded by a scire facias. It is believed no case can be found impugning this position, to wit: that a scire facias, as far as it relates to execution,, must be interposed between the judgment and execution, prevent undue surprise upon the party to be charged. After so full an examination of the authorities respecting the scire facias to authorize an execution, it cannot be necessary to give any further answer to the cases cited at the bar from Bacon’s Abr. and Burrow, than that they do pot apply to the present case, being upon error and not: *45 upon execution. They are not ad idem. The main question made at the bar and so much contested there, is, whether a scire facias had issued against the heirs.
Upon principle we have seen it could not; next let us see how it stands upon the authorities. The oldest reported case upon this point introduced at the bar, is Brunknold vs. Owens, Dyer 208, a. where defendant died after judgment, and plaintiff sued out scire facias against the heir and terre-tenants, returned as to the heir, nihil habet, and non est inventus, and as to Owen, the terre-ten-ant, “warned, but he made default,” and elegit against him without sci. fa. against the executors. To this case there is added a quere, if there ought not to issue first, a sci. fa. against the executors of the debtor and if nihil, &c. then afterwards against the terre-tenants. This quere being by Lord Dyer himself, detracts from the authority of the case; and Chief Baron Comyns, when he abstracts it in his digest, does it with a semble. Lord Chief Justice Treby, also in his note to this case, adds 24 Elizabeth per Manwood Chief Baron. The course of the exchequer is, that if a man is indebted to the King by record, or otherwise, and dies, the heir shall not be charged, if the executor has assets, nor his feoffee. The next book cited is Fitzherbert’s N. B. 595. Lord Hale’s commentary. Here three cases are noticed by Lord Hale; the first is 7 H. 4, 30, and is this — if the party to a judgment and recognizance be returned dead, a scire facias shall issue first against his executor, and if he has none or they have not assets, then a scire facias against the heir. The second is the above case from Dyer. The third is 7 H. 4, 31, a. where it is said, it seems he shall not issue a scire facias against the terre-tenants, till a scire facias sued against the executors and nihil returned. It was argued from the first of the above three cases, as if it proved that a scire facias need only issue against executors first, according to the actual fact whether there were executors and they had assets; if there were, then it should issue; but if the fact was, no executors, or no assets, then no scire facias against the heir. And this is in perfect accordance with *46 the common law principle of the personalty being the prjmary fun(j for the satisfaction of debts. And so is Sir William Herbert’s case, 3 Coke, 11, recognizance to the Queen, yet the prerogative could not dispense with the calling upon the executors of the debtor, for there the scire facias was against the executors, as well as the heir and terre-tenants. If scire facias, is not necessary against the executors, why use this unnecessary and useless process in Herbert’s case. The single case in Dyer, perhaps, may be accounted for on the maxim, quisquís renunciare poíesí, juripro se introducto, for in that case the terre-ten-ant, Owen, was warned; he had notice to defend himself, not nominally, but really by actual service, and he made default uand judgment was given against him by default for want of a defence. Be this as it may, it is a solitary case, and as before stated, subject to the deduction of a quere by Lord Dyer himself, and the semble of Chief Justice Comyns. The next case cited in the argument, is Panton vs. Hall, from Carthew. The principal point of that case as reported by Salkeld, is, that where there is a joint judgment, the scire facias must be joint also. In the case in Carthew, several points were made, and it was said, that where a judgment is had against one who dies before execution, a scire facias will not lie against his heir and terre-tenants, until a nihil is returned against his executor ;*and so are the cases in the margin, say the book, and nine cases are cited from the year books, as supporting the position thus laid down, and one as contra, the above case from Dyer, 208, a. This is the last reported case in England, where this point has been noticed, an4 it has ever since been referred to as the law on the subject. And whether there laid down as a distinct proposition, supported and established by the numerous cases cited in the margin of the book, or as connected with the matter before the court; — whether it formed an essential part of the decision, or might have been omitted in quashing the scire facias in that case, is perfectly immaterial to the present purpose — the question is, whether the position is the law of England, founded on the common law *47 and the statute of Westminster. It was so considered there by the authorities cited, and so has been considered ever since by all the writers on the law, wherever it has been necessary to touchfthe point, or treat on the subject. It is considered as the law by the compilers of Ba. Abr. in the following words, “where a judgment is had against one who dies before execution, a scire facias will not lie against his heir and terre-tenants, until a nihil is returned against his executor.” 6 Ba. Abr. 114. Sergeant Williams, the learned annotator of Saunders, considers it in the same manner. See his note 2 Saund. 72 a.
So Tidd, in his practice, lays down the same law, and cites Carthew, and Williams’' Saunders as above, thus recognizing it not only as law, but that it is so considered by them. In the latest work treating on the doctrine of judgments and executions, Bingham 131 says, when a judgment is had against one who dies before execution, it seems that a scire facias will not lie against his heirs and terre-tenants, until nihil is returned to a scire facias against his persona] representatives; but when nihil is returned, the plaintiff may have a scire facias against the heir alone, or jointly with all the terre-tenants of the land. And the same author, when speaking of a recognizance, says, “on a recognizance, a scire facias may be had against the executor, heir and all the terre-tenants of the cogni-zor jointly, but the executor must, it seems, in this case either be joined, or have nihil returned against him before the heir or terre-tenant can be proceeded against,” pages 132, 133. This is a very recent work, it came out in 1815, and it leaves no question as to what the law is in England at this day, and what it always has been on this point.
This scire facias against the heirs of Martin Armstrong could not issue by the common law and the statute of Westminster, unless the statute 5, Geo.'2d, authorized it. This we will next examine. The provisions of that statute were predicated upon the situation of the then colonies, and the relative means and efficiency of the real estate in them, as an annual productive fund for the payment of *48 debts, compared with land in England. The lands in England then were, and had been from time immemorial, of considerable yearly value. Their average rental at that time according to the annals of agriculture, was from half a dollar to six dollars per acre, including pastures as well as arable land, which two divisions comprehended the whole surface of the country; these, extended by the elegit, produced no mean fund for the satisfaction of the judgment creditor, and it could be ascertained with tolerable precision, when the judgment would be discharged by the annual forfeits. The same mode of attempting the satisfaction of a judgment in North Carolina, would have been in most instances perfectly nugatory. Of the lands at that time in North Carolina granted, many were not brought into estimation at all, and of those that were so, a small portion only compared to the quantity in the grant, or held by the title of the possessor or claimant. The operation of the elegit upon the lands of a debtor under such circumstances, must have been for the purpose of obtaining satisfaction of the judgment against him from the annual profits, in most cases perfectly inefficient for the creditor. On the part of the débtor it would also have been injurious to-him; his estate would bejjsacrificed without a reasonable prospect of its disincumbrance, the possession would be gone from him, and from the small annual income remaining so and approaching to a perpetuity, would render the reversion of little consequence.
To remedy these inconveniences as well on the one side as on the other, was one of the principal objects of the statute of George. It effected these purposes by passing the fee simple in the lands of the debtor by the fieri facias, instead of the chattel interest therein by the elegit, and by subjecting the whole of the lands, instead of the one half as formerly; thus placing the debtor’s property in a fair situation to bring its full market value to the creditor. The statute did not interfere with the policy of the law in other' respects; it did not make the land chattels, or the chattels land; it did not confound the properties of these two different kiuds of estate or destroy their *49 respective relations to the owner of them. Real estate, as before descended to the heir, with its incidents and its claims upon the personal estate, and the personal estate, passed to the personal representatives, subject to its former burdens and incumbrances.
This statute not varying the question, it having produced no alteration in the law in this respect, brings us down to the declaration of independence, and it remains to see whether any, and what alterations therein, has been produced since. The first act on. the subject is 1777, ch. 2, section 29, in these words:
“And whereas, divers persons residing in other states or governments, possessed of lands, tenements and heredita-ments, in this state, may have contracted, or may contract debts with the inhabitants of this state without having personal estate in the same to satisfy such debts and damages; and whereas, bv the policy and genius of our present constitution, lands and tenements ought to be made subject to the payment of just debts, when the debtor hath not within the limits of this State, goods and chattels sufficient to satisfy the same: Be it therefore enacted by the authority aforesaid, That all process which heretofore issued against goods, chattels, lands and tenements, shall for the future issue in the same manner; and such as issued only against goods j;nd chattels, shall hereafter issue against lands and tenements, as well as goods and chattels; and the sheriff, upon such attachment, execution or other process, .shall proceed to levy the same upon the goods and chattels of the defendant, in the first instance, if any there be; but if to the best of his knowledge there be no such goods and chattels, or not sufficient to answer the plaintiff’s demand, he shall execute the same upon the lands and tenements to the amount of the whole debt, or of so much as may remain more than the value of the goods and chattels so found; and such lands and tenements shall be liable, under the restriction aforesaid, to be sold to satisfy the judgment of the plaintiff; and where any sheriff shall have levied process upon lands and tenements, in manner aforesaid, and judgment shall have been *50 thereupon bad, he shall not proceed to sell the same until, in the most public place in histbailiwick, he shall, forty days at least before the day of sale, have advertised the Same.”
This act, in its preamble as well as in its enacting part, maintains the common law principle of the personal estate being the proper and primary fund for the payment of debts. The preamble declares it to be the policy and genius of our constitution that lands should be subject to the payment of debts, but when; when the debtor hath not within the limits of the State goods and chattels sufficient to satisfy the same. And in the enacting clause, in pursuance of this policy, it says, the sheriff upon such execution shall proceed to levy the same on the goods and chattels of the defendants in the first instance, if any there be, but if, to the best of his knowledge, there be no such goods and chattels, or not sufficient to answer the plaintifi’s . demand, then he shall execute the same on the lands to the amount of the debt, or of so much as may remain, more than the value of the goods and chattels so found. A decree and stronger declaration of the common law principle above stated could not be made, than is made, by the words of this enacting clause. In addition, they show, impliedly, what was the construction of the statute of George 2d, previous to the revolution, and are the best comment on the act, and on Westminster the 2d, ch. 18.
But independent of those considerations this act of itself alone, and by its own proper force and effect, subjects the land of the debtor, and constitutes the rule respecting their liability and the manner of it. It subjects them only sub modo, that there is no personal estate, or not a sufficiency, then to the amount of the deficiency. It is observable on this statute that the circumstance, that the sale of the land of the debtor for the satisfaction of his debts being upon terms, is twice brought into view and twice declared. After having specifically expressed the terms, it goes on in repetition saying “and such lands and tenements shall be liable under the restrictions, to be sold to satisfy the judgment of the. plaintiff.” As if rx abun- *51 danti cautela, to enforce the due execution of the terms of their liability and sale.
Having no doubt upon a view of the common law, the statute 13, Ed. 1, ch. 12, the statute of Geo. 2d, and the express law laid down in the English books, the most ancient as well as the most modern, that in the present case before the revolution a scire facias ought to have issued against the personal representatives of Martin Armstrong, before the one that issued against his heirs, I surely cannot doubt but that it ought since, after the acts of 1777, ch. 2, 5, 29, and 1794, ch. 1, 5,23, which are more plain, more clearly expressed, and more explicit on the subject. The want therefore of a prior appeal to the personalty in the present case, as the law requires, would be such an irregularity in the proceeding to subject the real estate, that the judgment on the scire facias and the subsequent proceedings thereon, ought to be set aside. And the party in interest, having.made as early an application to set them aside, as was in his power, and no presumption of acquiescence arising from the length of time, there being on his part a complete ignorance of these proceedings. See. 1 Salk. 63, 264. As to the fact of there being no personal representative of Martin Armstrong, that does not alter the question. It cannot be taken notice of but by the return of the scire facias against the executor. Hence the process for this purpose need not name him A. B. by his Christian and surname, but only “cause to be made known” unto the executor of the will of M. Armstrong deceased. But it may be questionable, (though not necessary to be decided on in this case) whether by our law the return of no executor, could in any case dispense with the want of one, especially since the act of 1784. Our law does not contemplate the case of “no personal representative” whenever a claim exists against the deceased, and its provisions are broad enough to guard against such a defect. The act of 1715, ch. 84, 5,8, says, administration shall be granted to the next of kin, if claimed within a certain time; if no such claim, then to the greatest creditor upon oath. And the act of 17-59, ch. 39, *52 5, 1, following up the same idea, provided for the case , ° 1 _ , where administration has been granted to the creditor and there is a deficiency of personal assets to satisfy his de-man d by giving recourse on the real estate, and prescribes the'mode of proceeding; plainly indicating that in all cases of recourse to the real estate, there must he a representative of the personalty, as an efficient agent in-making out a title to that remedy.
Opinion delivered by
Judge Emmerson.
The questions to be decided in this cause are the following:
1st. Will a scire facias lie against the heirs on a judgment against the ancestor, before any proceedings are had against the personal representative?
2d. Is a judgment rendered against heirs on two- returns of a sci. fa. that the defendants are not found, void; and'ought an execution issued on such judgment to-be quashed on such motion?
By the common law lands could not be sold for the payment of debts, nor were they liable to the execution at the suit of a subject, except on a. judgment against the heir on the bond of his ancestor? The statute of Westminster, 2d. ch. 18, which gives the elegit, first made them chargeable in ordinary cases; but under this statute, the lands could not be affected in the hands of the debtor, until his personal estate was first exhausted; and in case of his death, it seems to have been necessary to resort to-the personal representative, before the lands could bo charged in the hands of the heir for the-satisfaction of a judgment against the ancestor; hence it was necessary to sue out a sci. fa. vs. the personal representative, and to shew by the return that satisfaction of a judgment could not be obtained from him, before a sci. fa. vs. the heir and terre-tenants could be supported. Vide. Carth. 107. 6 Bac. 114. Fitzherb. Nat. Br. 596, note a. 2 Saund. 72, note o. p. Bingham on Judgments, 131. Tidd’s Prác. The solicitude to protect the real estate manifested by the English law, is still more strongly evinced by ours, and not wilhoui reason. The act of 1777, incorporated into the *53 act of 1794, ch. 1, sec. 23, declares it to be the policy of our government to subject real estate to the payment of debts only in those cases where the personal estate of the , debtor is insufficient and imposes it as a duty on the sheriff; a duty, for the breach of which he is answerable to the party injured in damages, to levy the debt out of the personal estate in the first instance, if enough for that purpose can be found. The acts of 1784 ch. 11, and 1789, ch. 39, have prescribed modes by which in every instance a creditor may resort to the real estate, where the personal estate shall be found insufficient to satisfy his demand. By requiring a resort to these modes of proceeding, we shall obtain what is most evidently required by the spirit of all our acts in relation to the subjection of real estates to the satisfaction of debts; its exoneration in all cases where the personal estate is sufficient: Nor do 1 conceive that creditors have any right to complain of hardship in being compelled to resort to those modes; By the common law the land was beyond reach, and by the statute of Westminster the second, they could only obtain satisfaction out of the .profits arising from it. Surely then, where the legislature authorized the entire appropriation of it to the satisfaction of their demands by subjecting it to sale under a fi. fa. they had no right to complain that the favor was granted on the condition that they should first shew their inability to obtain satisfaction out of the personal estate — more especially when it is considered that an election to resort either to the real or personal estate would in many instances be productive of extreme hardship and injustice. In most instances it is well known that personal estate will produce at sheriff’s sale a sum much more nearly approaching its real value than can be had for lands. The law has made it the duty of the personal representative to pay the debts as far as his assets will extend — the performance of this duty it has furnished the creditor with the means of enforcing — and it contemplates only the subjection of the estate of the heir when these means prove ineffectual. By requiring him to resort to the personarrepresentative, in some cases *54 he will be subject to a short delay, and in a few others, may be compelled to take upon himself the administration; these, it is true, are inconveniences resulting from the death of a debtor, but when compared with the mis-chiefs which may result to the heir, by permitting an immediate and direct resort to the real estate, they scarcely merit attention. Such a course might, and not unfre-quently, would result in an almost total sacrifice of the inheritance of infant heirs, unable to protect their interests, when too, perhaps, it was wholly unnecessary for the satisfaction of the creditor’s claim which could have been readily obtained from the personal estate. Under the act of 1784, ch. 11, the creditor, after having proceeded by sci. fa. against the personal representative, and having thereby shewn his inability to obtain satisfaction of his judgment for want of assets, may as I conceive have a conditional award of execution against the real estate; and unless after notice to the heir, if resident in the state, he can shew good cause to the contrary, this conditional award will be confirmed. By this course, the creditor will be subjected to no other inconvenience than that arising from the delay; while the heir will be protected from the unnecessary deprivation of his inheritance, to which he would otherwise be frequently subjected. If there be no personal representative, the creditor, by administering on the estate of his debtor, may, by the provisions of the act of 1789, ch. 39, proceed against the heir, should the situation of the personal estate render it necessary. Believing that it is contrary to the spirit of all our laws relative to the subjection of real estates to the payment of debts, to permit a resort to them in the first instance, and that by a fair construction of the acts of 1784, ch. 11, and 1789, ch. 39, an adequate remedy is provided for creditors in all cases where the personal estate of deceased debtors is insufficient for the payment of their debts. I am of opinion that a sci. fa. cannot be maintained against the heir in any case, until it is shewn in the manner prescribed by those acts, that the personal estate is insufficient for satisfaction of the demands. For *55 the reasons assigned by Judge Whyte, and those tobe ° J ° J found in 3 Hay. 300,1 am of opinion that a judgment rendered in a sci. fa. against heirs on two returns of non est inventus, is void as to them, and of course cannot warrant the issuance of an execution; and if one is issued on such judgment it ought tobe quashed. The judgment of the circuit court ought therefore to be affirmed.
Opinion delivered by
Judge Haywood.
At the com-
mon law, lands were liable to be extended upon a judgment rendered against the heir. All his lands, and not a moiety only, were extendible, and the lien of the judgment related to the commencement of the action against the heir. ' The same lien yet continues under our act of 1789, ch. 39, sec. 3. If the heir conveys before process taken out against him, he is liable to account to creditors for the value. If he has conveyed after process taken out against him, the land so conveyed may be taken and sold on a fi.ja. At the common law he may be proceeded against on the bond of his ancestor binding his heirs, though the executor had not been sued. The creditor could proceed against either at his election. The executor was bound to reimburse .the heir out of the personalty. When the elegit was introduced by the statute of Westminster, to advance the views of the statute, it was made to relate to the judgment, and was so worded as to operate upon a moiety of all the lands which the defendant had on the day of the judgment rendered or at any time afterwards; if the ancestor died after judgment it attached upon a moiety of all the lands he had at the time of the judgment. The descent was broken. The heir, if he entered, was terre-tenant and not heir. No sci. fa. was necessary because he had the land cum onere. 1st. H ay-wood page 1. When ex gratia curice a sci. fa. issues against the heir upon a judgment against the ancestor, the judgment of the court is, that the plaintiff have execution of the judgment rendered against the ancestor. A f. fa. issued upon the judgment against the ancestor tested in Ms lifetime, was leviable upon Ms chattels without *56 a sci.fa. against the executor, for in contemplation of law being in custodia legis, these goods did not go into the hands of the executor. The 5th Geo. 2, ch. 7, made lands lia-hie to all just debts as well as specialty debts, and made them assets as real estates were by the English law. In the hands of the ancestor all his lands, and not a moiety only, were liable to be sold by fi. fa. as personals were. After his death they were liable in the hands of his heir. The lien of judgment continued; — the act of Geo. 2d was deemed not to have intended a discontinuance of any advantage which creditors before had, one of which was the lien, by judgment, under the statute of Westminster. 1st. Haywood, Bell and Hill. That lands could not be sold as personalty by fi. fa. after the act of 5 Geo. 2d ch. 7, was first decided in North Carolina in Baker vs. Long, and Baker vs. Ashe, reported in 1 Haywood’s Reports. These decisions were made upon cases originating before the revolution. Under the act of Geo. 2d, the creditor could resort to the heir or executor at his election,but the heir might resort to the personal estate for reimbursement. The act of 1777, contained the same provisions as are in our act of 1794, ch. 1, sec. 23; execution against goods and chattels, lands and tenements, shall be levied upon goods and chattels in the first instance, but if to the best of the Sheriff’s knowledge there be none such, then upon the real estate. It then began to be understood that the personal estate was the primary fund and was first to be looked to; and the creditor had not any longer his election as formerly to sue the heir first, or the executor at his election. And the practice to obtain judgment against the executor made it necessary to provide by 1784, ch. 11, for the mode of proceeding against the heir alter judgment against the executor; judgment against the ancestor was supposed to be already provided for by. the old common law rules. The creditor could not proceed against the heir after judgment against the executor, for his debt was merged in the judgment against the executor. The sci. fa. has not been allowed to him, as upon judgment against tlie ancestor. The remedy by sci.fa. was given by *57 the act of 1784, ch. 11; that personal estate was ¿he pri-maryfund, even as between creditor and debtor was then firmly established by construction upon the act of 1777. Such judgment was now rendered effectual against the heir by the act of 1784, ch. 11. And as the creditor who was also administrator, could secure himself and plead fully administered, and could not proceed against the heir, before the plea was found by verdict, therefore he was provided for by act of 1789, ch. 29. This act does not require that a creditor must take administration in order to receive his debt; but that when he has taken it he shall not be without remedy.
It is now urged that the act of 1784, made a sci. fa. necessary upon a judgment against the ancestor as well as upon a judgment against the executor. But what would be the consequence if it were so decided upon a sci. fa. against the executor, to shew cause why execution should not issue upon the judgment against the ancestor? The only thing the court could do, would be to give an award of execution pursuant to the exigency of the case; — that is, that the creditor should have execution of the judgment of the ancestor, upon a sci. fa. or other writ — for the sci. fa. against the executor is only to have execution on the judgment against the ancestor; and the court cannot give judgment by it against the heirs. If the executor should plead and establish the plea of no assets, could the court issue such a judgment nisi against the lands in the hands of the heir? Such judgmentwould not be warranted by the exigency of the sci. fa. Such sci. fa. against the executor is not given by the act of 1784. It would be a new devised rule by the court and a new judgment upon that writ neither called for by the case, nor authorized by the act of 1784. But say that such'sci. fa. could be sued out, and such judgment could be rendered, then, I ask, from what time would the land be bound? The act of 1789 says from the time of the sci. fa. sued out against the hei r. If from the time of the sci. fa. taken out against the heir, what then will become of the lien of the first judgment? The act of 1789 permits alienation at any time from the *58 date of the sci. fa. Then, if that law governs this case as well as the one particularly specified in the act of 1784, the lien of the judgment against the ancestor is lost; and notwithstanding the judgment, the heir may alien at any time after the death of the ancestor, and before the date of the sci. fa. against the heir. And the act of 1784, together with the amending act of 1789, has repealed the law for affixing a lien on the rendition of the judgment against the ancestor. And is it possible that the act of 1784, which does not mention the case of a judgment against the ancestor, and expressly relates to a judgment against the executor, after the death of the ancestor, can, by mere construction and implication, effect an alteration of much importance? My opinion is decidedly against any Such construction. Then this question is to be decided by the law as it stood prior to the act of 1784, and as if it had never been made; and then the law clearly is as stated in 2d Bac. Abr. 475. 4 Comyns Digest, 114. 1st. Haywood 1. That a sci. fa. is not necessary against the heir upon a judgment against the ancestor — 1 Ba. 244— same 724 — Comyns Digest 36.
Suppose this judgment erroneous for some or all of the causes alleged — is it proper to quash the execution? It is a good judgment till reversed, and execution must issue upon it whenever the plaintiff calls for it. Otherwise, any erroneous judgment would be examinable and reversible by the same court who gave it; when the rule of law is that the same court which gave judgment cannot reverse it for an error in law. Otherwise it might be given on one day, reversed on the next, and the judgment of reversal itself reversed afterwards, and so on ad infini-tum — reversals and re-reversals. Execution may be quashed when it issues before the time it ought, or in a different form from what the judgment warrants; or otherwise erroneously and always with a salvo of the judgment itself, but never because the judgment itself is erroneous only, but remains in force.
By the act of 1809, ch. 121, sec. 3, where there is no executor or administrator to continue suit against, which a creditor had commenced in the fetimeofihe *59 or intestate, the heir may he proceeded against passing over the personal estate. — In the two last instances an impossibility to proceed first against the personal estate, dispenses with the legal requisition to do so impotentia legem excusat. The act of 1784, ch. II, regarded, expressly, suits commenced and judgments obtained after the death of the testator, not judgments obtained before the death of the testator.
What then are to be the proceedings upon such judgment against the ancestor? I answer,fi.fa. issues against the personal estate dated of a term, which was in the lifetime of the testator, or of a term subsequent to his death. In the former case no sci. fa. is necessary: the personal estate is bound from the teste, and is liable to the creditor’s satisfaction whenever it may be, and whether there be an executor or administrator or not. In the latter case there must be a sci. fa. to make the executor a party, for the personal property is not intercepted by afi. fa. and prevented from coming to his hands as the legal contemplation in the other case. And in the hands of the executor it must be employed to pay debts in legal order. He must have an opportunity to shew that it is not legally applicable to the debt demanded, but to some other. The latter case is not under the regulation of 1784, ch. 11, but of 1777, and statute of Geo. 2d, and of Westminster. If upon a sci. fa. against the executor, the plaintiff cannot get satisfaction from the executor, or if there be no executor against whom he can sue out a sci. fa. he may then enforce the execution of the judgment against the ancestor. And he may proceed as if the act of 1777 had not parsed, for that act alone forced the creditor upon the executor in the first instance. Its directions being complied with, as to a previous resort to the executor, and that proving fruitless, it no longer inferieres as a veto to proceed against the heir, nor will it interfere where it is impossible for the plaintiff so to act. When you proceed against him the path is pointed out by the decisions and practice upon and under the statute of Westminster. A sci. fa. is not necessary against the heir, *60 according to the decision in Baker and Long, 1st Haywood, because the lands being bound from the day of judgment rendered, are reserved for satisfaction of the or in the words of the court in 1st Haywood, pass cum onere of the judgment. It is agreeable to practice however,to take out the sci.fa. — If more than a year elapses and a sci.fa. be taken out, the heir is considered as a terre-tenant, who may be effected by the execution. The judgment upon the sci. fa. is that the plaintiff have execution of the judgment against the ancestor. The execution when it issues is upon that judgment. The lien is said, in 1 Haywood, in the case of Bell and Hill, only to have the effect of preventing a sale by the heir: it was contended there that it overreached all subsequent sales of later lien. Is the judgment upon the sci. fa. to have execution void, because one of the defendants isdes-cribed as the wife of M’Call, without giving her Christian name, or in calling Thomas I. Armstrong Thomas Armstrong only? The objection shews in the strongest point of view the impolicy of yielding to the suggestion that a description of the defendants will not do. Here is a description which no one could mistake, and yet because it is descriptive, the whole procedure is void. I am satisfied that if such á course be adopted and persevered in, there is hardly any case of a judgment against heirs in West Tennessee which will be found tobe correct. The same remark applies to the objection that the sci. fa. ought to issue to the county of each defendant’s residence. What law authorizes such a direction of process from the county court? No court has ever adopted such a course, and even if wrong process has issued, the judgment is not therefore void; nor if an informal judgment be rendered, that the execution issue against the lands in the hands of the heir. There may indeed be relief against a judgment upon two nihils, upon application by the defendant; not because the judgment is void or even erroneous, but because being founded upon two nihils, it is just to let in his defence, if he has any to make, and will apply in reasonable time. The case in 2d Strange 107fi, shews (he *61 grounds of the court’s interference, and the early application which the court requires. If the judgment he not set aside upon such application it is valid. When seta-side, it is to let in the merits. The judgment is set aside to let in a defence not because it is void alone, nor is a judgment void merely because a parly is misnamed; it is only erroneous, and he may reverse by writ of error. No doubt a judgment void for want of notice to the party to be affected by it, may be set aside by audita querela; but whilstit remains not set aside, and execution issues con-formably to it, the execution cannot legally be quashed. Executions are quashed for issuing out of time, as if execution hath been stayed on record, and issues before the time is out, or where superseded and yet is taken out be-fere the supersedeas is discharged. I am of opinion that the execution in question could not be quashed; first, because the judgment upon which it rests is a judgment against the ancestor, and that is a valid judgment. Secondly, because if the award of such execution upon the sci. fa. be legally incorrect for any of the causes alleged, that can only be examined upon a writ of error. Thirdly, admitting the execution to be void because of the misnaming of some of the parties, or because the sci. fa. did not issue to the counties of their residence, still there is no legal mode of quashing the fi. fa. but by quashing the judgment upon which it is founded. And if a motion to quash the judgment itself were brought forward, I think it could not legally be done. The consequence of setting aside all judgments upon motion which were subject to the like exigencies, are such as demand the deepest consideration and the most solemn circumspection. As to the objection that there were more defendants than need be, what harm is done by the redundance to those who were really the heirs — the other defendants ? I answer, none: the judgment may be reversed, as to them, without setting it aside as to all in like manner — as a suit may abate as to one defendant, and stand good as to others. I am of opinion that the proceedings of the circuit court should be reversed.